[Cite as *In re Estate of Taylor*, 2024-Ohio-1496.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

IN THE MATTER OF THE ESTATE OF
MARTHA TAYLOR

:
:
:  C.A. No. 29906
:
:  Trial Court Case No. 2022 EST 01100
:
:  (Appeal from Common Pleas Court-
:  Probate Division)
:
:

. . . . . . . . . . .

O P I N I O N

Rendered on April 19, 2024

. . . . . . . . . . .

MICHAEL J. MARTIN, Appellant, Pro Se

ERIC STAMPS, Attorney for Appellee, Sharon Martin

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Appellant, Michael J. Martin, appeals pro se from a probate court decision rejecting his exceptions to an inventory and appraisal. The inventory and appraisal was submitted by Appellee, Sharon Martin, in connection with the estate of Martha Taylor.[1]

---

[1] We will refer to the involved individuals by their first names because most of them have

**{¶ 2}** Michael's brief does not comply with App.R. 16(A), and he does not raise any assignments of error. From what we can gather, Michael claims the probate court erred in finding that he had failed to commence a separate will contest action. Michael contends that he did file such an action. In response, Sharon's attorney simply states that nothing in the record demonstrates trial court error. However, no more specific argument is made, and the brief is not helpful. Based on our review, we find that Michael failed to timely file objections to the magistrate's decision, and no plain error occurred that would justify setting aside the judgment.

**{¶ 3}** Although the trial court could have construed Michael's pleading as an attempt to file a will contest, its failure to do so was not plain error that justifies setting the judgment aside, for several reasons. First, Michael never sought to amend the pleading to add parties that are necessary in will contests under R.C. 2107.73. This is not a jurisdictional defect but is grounds for dismissing an action. More importantly, Michael failed to comply with requirements for commencing such an action, like requesting service and filing an affidavit of indigency. Therefore, no plain error occurred that would justify reversing the judgment. Accordingly, the judgment will be affirmed.

## I. Facts and Course of Proceedings

**{¶ 4}** On May 20, 2022, Sharon filed a notice in the probate court that she was depositing Martha Taylor's will, which was attached to the notice. In the will, which was dated October 25, 2021, Martha left all her personal and real property to Sharon, who

---

the same last name.

was her sister. The will further said that if Sharon failed to survive Martha by 60 days, Sharon's share would lapse and the property would pass to Tasha Martin. Additionally, the will designated Sharon as executor and appointed Tasha as executor if Sharon could not serve.

{¶ 5} On May 23, 2022, Sharon filed a document listing the surviving spouse, children, next of kin, legatees, and devisees. According to this document, Martha did not have a surviving spouse or adopted or biological children. Martha's parents were both deceased, and she had five siblings: Sharon, Ann Martin, Michael Martin, Drew Martin, and Wanda Martin. Also on May 23, Sharon filed an application for authority to administer the estate and listed $53,000 in personal property and $56,000 in real property, for a total estate value of $109,000. The application said that Martha had died on October 23, 2021. In addition, Sharon waived notice of the probate of the will and filed a fiduciary's acceptance, by which she agreed to assume the executor's duties.

{¶ 6} The Waiver of Notice of Probate of Will stated that:

> The undersigned, being persons entitled to notice of the probate of this will, waive such notice. After a certificate is filed evidencing these waivers and any notices given, any action to contest the validity of this will must be filed no more than three months after the filing of the certificate for estates of decedents who die on or after January 1, 2002.

{¶ 7} On June 7, 2022, the court filed entries admitting the will to probate and approving Sharon's application to probate the will. The same day, the court filed entries appointing Sharon as executor and appointing an appraiser. A death certificate filed that

day said Taylor had died at Miami Valley Hospital in Dayton, Ohio, on October 23, 2021.

{¶ 8} On July 5, 2022, Michael filed a pro se objection to the will and asked the clerk to send him forms and a booklet of the court's rules. Michael mentioned that his facility (a prison) lacked forms for contesting the will. The court's docket does not contain any response to this request.

{¶ 9} On July 7, 2022, Sharon filed a certificate of service of notice of probate of the will. This document stated that all persons entitled to notice had waived service, had received notice of the hearing on the probate of the will or a contest as to jurisdiction, or had not been notified because their names or places of residence were unknown or could not be ascertained with reasonable diligence. Supporting affidavits were also filed. One affidavit discussed unsuccessful efforts to reach Wanda. The other affidavit said that all legatees or devisees other than Michael, Ann, and Drew had waived notice of the will's probate or their addresses were unknown. Certified mail receipts for Michael, Ann, and Drew were attached to this affidavit.

{¶ 10} On September 19, 2022, the court filed "correspondence" it had received from Ann. In this document, Ann objected to Sharon being a fiduciary. Ann further alleged that Sharon had failed to disclose assets to her attorney that belonged to the parties' mother, Martha. The only identified asset was a Fifth Third Bank account that allegedly contained $86,000 to $90,000. Another document was filed that day in what appears to be the same handwriting, identifying Ann, Michael, and Drew as next of kin and listing their addresses.

{¶ 11} On October 4, 2022, the court filed two pro se documents it had received

from Michael. The first was a motion seeking leave to file in forma pauperis without posting a $250 filing fee for civil cases. The motion also asked the court to waive other filing requirements, including page size and copies. In the motion, Michael stated that he had been incarcerated since March 2016 and received only $18 per month, which he used for necessities. The court never ruled on the motion.

{¶ 12} In the second document, Michael challenged the will pursuant to R.C. 2107.71, contending it was fraudulent because the signature did not belong to Martha. Michael also noted the will was dated October 25, 2021, when the death certificate stated Martha had died two days earlier. Like Ann, Michael asked the court to appoint a different executor due to Sharon's alleged fraud.

{¶ 13} On October 11, 2022, Michael asked the court to "appoint counsel" and to grant an extension of time so he could more fully respond to the matters at issue. According to Michael, Martha was "on" an account from Wright Patterson or Fifth Third Bank that belonged to Roberta James, who had died approximately one week before Martha died. Allegedly, Roberta was the siblings' mother. Michael claimed Roberta's account had contained $90,000 to $100,000, and he asked for an investigation. On October 21, 2022, Michael filed another document in which he claimed a medical doctor had determined that Martha had not been competent to sign anything on October 25, 2021, and that she had lacked mental capacity to sign a will, meaning her signature had been forged. The court's docket summary lists all the items Michael filed in October 2022 as "correspondence."

{¶ 14} Sharon filed an inventory and appraisal on October 28, 2022, listing the

following estate assets: $1,573 in tangible property; $93,081.64 in intangible property; and $56,240 in real property, for a total of $150,894.64. As intangible property, the schedule of assets included three accounts at Fifth Third Bank totaling $93,081.64. The court set a November 30, 2022 decision date for the inventory and appraisal. Before that date, on November 23, 2022, Michael filed exceptions to the inventory (which the court again listed as "correspondence"). Once more, Michael claimed the Fifth Third Bank accounts belonged to the parties' mother, not to Martha. He also alleged fraud with respect to a property deed in that it had been changed two weeks after Martha's death to remove the name of Martha's late husband, Charles.

{¶ 15} On January 6, 2023, the court filed an entry approving the inventory and appraisal because "no exceptions" had been filed. Entry Approving Inventory and Appraisal (Jan. 6, 2023), p. 1. On July 31, 2023, Sharon reported some minor newly discovered assets like escrow refunds, and the court approved that report as well.

{¶ 16} On August 23, 2023, a magistrate filed a decision overruling Martin's exceptions. The court adopted the decision that same day. On September 8, 2023, Martin filed a motion requesting a jury trial and another document that included two items: objections to the magistrate's decision and judge's order and a notice of appeal. In addition, Martin filed a motion seeking leave to file delayed objections. However, on September 8, 2023 (the same day), Martin filed a notice of appeal with our court.

II. Discussion

{¶ 17} As noted, Michael's brief fails to comply with App.R. 16(A), which contains

various requirements for briefs, including: "(3) A statement of the assignments of error presented for review, with reference to the place in the record where each error is reflected[;] (4) A statement of the issues presented for review, with references to the assignments of error to which each issue relates"; "(6) A statement of facts relevant to the assignments of error presented for review, with appropriate references to the record in accordance with division (D) of this rule[; and] (7) An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies."  "Where an appellant fails to comply with these requirements, App.R. 12(A)(2) allows us to disregard a party's assignments of error." *State v. Huelsman*, 2d Dist. Miami No. 2022-CA-21, 2023-Ohio-649, ¶ 7, citing *State v. Mize*, 2022-Ohio-3163, 195 N.E.3d 574, ¶ 77 (2d Dist.).

{¶ 18} Despite this failure, we may decide to consider error in the interest of justice. However, we are not required to do so.  *E.g., Dayton City School Dist. Bd. of Edn. v. Dayton Edn. Assn.*, 2018-Ohio-4350, 122 N.E.3d 249, ¶ 43 (2d Dist.) (disregarding alleged error); *Ransom v. Aldi, Inc.*, 2017-Ohio-6993, 95 N.E.3d 699, ¶ 23 (2d Dist.) (considering error in the interest of justice).

{¶ 19} We choose to consider Michael's alleged error here, or at least what we perceive it to be.  However, our review is constrained by Michael's failure to timely object to the magistrate's decision.  Under Civ.R. 53(D)(3)(b)(i), "[a] party may file written objections to a magistrate's decision within fourteen days of the filing of the decision, whether or not the court has adopted the decision during that fourteen-day period as

permitted by Civ.R. 53(D)(4)(e)(i)." The magistrate's decision was issued on August 23, 2023, and objections were required to be filed by September 6, 2023.

{¶ 20} No timely objections were filed. Instead, on September 8, 2023, Michael filed untimely objections with no substantive content. That day, he also filed a motion for a jury trial, which was not an objection, and another document seeking to file delayed objections. This was combined with a notice of appeal. Neither was an objection.

{¶ 21} Notably, however, on September 8, 2023, Michael filed a notice of appeal with our court and thereby deprived the trial court of an opportunity to rule on the request to file delayed objections. *See State ex rel. State Fire Marshal v. Curl*, 87 Ohio St.3d 568, 570, 722 N.E.2d 73 (2000) (once a notice of appeal is filed, the trial court is deprived of jurisdiction over the case, other than collateral matters like contempt that are not inconsistent with an appellate court's power to affirm, modify, or reverse the trial court's decision).

{¶ 22} When a party fails to timely object to a magistrate's decision as required by Civ.R. 53, courts apply the "plain error" rule. *E.g., Curry v. Bettison*, 2023-Ohio-1911, 216 N.E.3d 797, ¶ 63 (2d Dist.); *Barclay Square Condominium Owners Assn. v. Ruble*, 2d Dist. Montgomery No. 29613, 2023-Ohio-1311, ¶ 23. "In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), syllabus.

{¶ 23} In the case before us, the magistrate's decision outlined the procedural background, including the "correspondence" from Ann and Martin. The magistrate concluded that no action to contest the will had been filed within three months of the July 7, 2023 filing of the certificate of notice. Because no separate action had been filed, the magistrate disregarded the fraud allegations as legal nullities. Magistrate's Decision Overruling Exceptions to Inventory & Other Correspondence Filed by Decedent's Siblings (Aug. 23, 2023) (Mag. Dec.), p. 2.

{¶ 24} The magistrate further found that Martha's will had been witnessed by two licensed attorneys who regularly appeared before the court. According to the magistrate, this produced a "substantial amount of credibility" to the court even if a will contest action had been filed. *Id*. at p. 2-3. Finally, the magistrate found that Martin was not entitled to make exceptions to the inventory because he was not named as a beneficiary in the will and therefore lacked standing. *Id*. at p. 3.

{¶ 25} As noted, on the same day, the probate court filed a judgment entry. The court said it had reviewed the magistrate's decision and found no errors of law or other defects on its face. Consequently, the court adopted the decision as its own. Judge's Order Adopting Magistrate's Decision (Aug. 23, 2023) ("Decision"), p. 1. In reviewing the court's decision for plain error, we will first consider whether a final appealable order exists. If it does, we will then consider the decision.

## A. Whether a Final Appealable Order Exists

{¶ 26} When we reviewed the record, questions arose about whether the order

being appealed is a final appealable order and whether we have jurisdiction over this case. We must consider these points before addressing any alleged errors, because jurisdiction cannot be either waived or bestowed on a court. *Care Risk Retention Group v. Martin*, 191 Ohio App.3d 797, 2010-Ohio-6091, 947 N.E.2d 1214, ¶ 97 (2d Dist.), citing *State ex rel. White v. Cuyahoga Metro. Hous. Auth.*, 79 Ohio St.3d 543, 544, 684 N.E.2d 72 (1997). We are entitled to raise jurisdictional issues on our own motion. *Id.*

{¶ 27} "It is axiomatic that an appellate court has jurisdiction to review only final orders or judgments of the lower courts in its district. Section 3(B)(2), Article IV, Ohio Constitution; R.C. 2505.02. We have no jurisdiction to review an order or judgment that is not final, and an appeal therefrom must be dismissed." *Nored v. Dayton City School Dist. Bd. of Edn.*, 2019-Ohio-1476, 129 N.E.3d 503, ¶ 3 (2d Dist.), citing *Gen. Acc. Ins. Co. v. Ins. Co. of N. Am.*, 44 Ohio St.3d 17, 20, 540 N.E.2d 266 (1989).

{¶ 28} "In order to be final, an order must comply with the requirements of both R.C. 2505.02 and Civ.R. 54(B), if applicable." *In re Guardianship of Igah*, 2d Dist. Montgomery No. 26416, 2015-Ohio-4511, ¶ 19. "R.C. 2505.02 defines a final order for purposes of appeal." *State ex rel. Downs v. Panioto*, 107 Ohio St.3d 347, 2006-Ohio-8, 839 N.E.2d 911, ¶ 18. As relevant here, R.C. 2505.02(B) provides that: "An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following: * * * (2) An order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment."

{¶ 29} " 'The hearing of exceptions to an inventory under Section 2115.16, Revised Code, is a summary proceeding conducted by the Probate Court to determine whether

those charged with the responsibility therefor have included in a decedent's estate more or less than such decedent owned at the time of his death.' " *Sheets v. Antes*, 14 Ohio App.3d 278, 279, 470 N.E.2d 931 (10th Dist.1984), quoting *In re Estate of Gottwald* (1956), 164 Ohio St. 405, 131 N.E.2d 586 (1956), paragraph one of the syllabus. In *Sheets*, the court concluded that an order approving the inventory was a special proceeding because it affected a substantial right. This was because the assets were liquid and, absent appeal, the co-beneficiary might not have had an effective remedy. *Id.* at 280.

{¶ 30} Subsequently, the Tenth District Court of Appeals noted division among appellate courts over whether probate court estate administration is a special proceeding under R.C. 2505.02(A)(2). *In re Estate of Robison*, 10th Dist. Franklin No. 17AP-232, 2017-Ohio-8980, ¶ 25. However, the court also noted its prior holding that " '[a] probate court's order approving an inventory which does not include certain items appellant claims are assets of an estate is an order affecting a substantial right made in a special proceeding. Thus, under R.C. 2505.02, the order is final and appealable.' " *Id.*, quoting *Sheets* at paragraph two of the syllabus. In this context, our own district has agreed that "proceedings in probate court generally qualify as 'special proceedings' under the statute." *In re Estate of Goubeaux*, 2023-Ohio-647, 209 N.E.3d 967, ¶ 14 (2d Dist.), referencing R.C. 2505.02(B).

{¶ 31} Nonetheless, courts have also held that " 'a ruling on exceptions to an inventory, standing alone, does not constitute a final, appealable order.' " *In re Estate of Persing*, 11th Dist. Trumbull No. 2009-T-0120, 2010-Ohio-2687, ¶18. *Accord In re*

*Estate of Smith*, 1st Dist. Hamilton No. C-190407, 2020-Ohio-3378, ¶ 11. *See also Estate of DeVore*, 7th Dist. Harrison No. 18 HA 0004, 2019-Ohio-2719, ¶ 55. However, an order denying exceptions is "a final appealable order if it also approves the inventory." *Persing* at ¶ 11, citing *Sheets* at 278.

**{¶ 32}** Unfortunately, the proceedings below display some odd procedure. Specifically, Sharon filed an inventory and appraisal on October 28, 2022, and Michael filed objections on November 23, 2022. After the scheduled November 30, 2023 decision date (when no decision was apparently made), on January 6, 2023, the court filed an order approving the inventory. The order stated that no exceptions had been filed, and it approved the inventory as proper. Entry Approving Inventory and Appraisal (Jan. 6, 2023). This order was final and appealable because it fit within the analysis outlined above, i.e., there was no indication that anything more needed to be done to approve the inventory. Although the court's decision may have been erroneous (as exceptions had been filed, whether valid or not), Michael failed to appeal from that order.

**{¶ 33}** Subsequently, on July 31, 2023, Sharon reported a few minor newly discovered assets, and the court approved the report the same day. Michael did not appeal from that entry, either. For unknown reasons, the magistrate then filed the August 23, 2023 decision overruling Michael's exceptions. However, the court, in fact, had already issued a final order on the inventory. As indicated, the current appeal was taken on September 8, 2023, from the order adopting the magistrate's decision.

**{¶ 34}** Based on the relevant case law, we would normally find that the August 23, 2023 decision overruling Michael's exceptions was not a final appealable order because

the court did not also then issue an order approving the account. However, doing so would have been futile because the court had already filed a final order. The magistrate's decision, from that standpoint, was unnecessary. Nonetheless, even if the magistrate had the ability to act, Michael's appeal of the exceptions ruling would be barred by res judicata to the extent it concerned his exceptions to the inventory and appraisal. Michael could have appealed the January 6, 2023 order approving the inventory (correct or not), but he failed to do so.

{¶ 35} "Res judicata bars relitigation of a matter that was raised or could have been raised on direct appeal when a final, appealable order was issued in accordance with the law at the time." *State v. Griffin*, 138 Ohio St.3d 108, 2013-Ohio-5481, 4 N.E.3d 989, ¶ 3. *Accord In re K.K.*, 170 Ohio St.3d 149, 2022-Ohio-3888, 209 N.E.3d 660, ¶ 60 (parents' failure to timely appeal dispositional orders granting temporary custody to agency barred later attempt to appeal that issue after agency was granted permanent custody of the children).

{¶ 36} On the other hand, the magistrate was able to consider Michael's attempt to contest the will because that issue had not previously been decided. For the same reason, res judicata would not bar Michael's appeal on that point. There was also a final appealable order to that extent. The order was entered in a special proceeding and affected a substantial right, because Michael's ability to contest the will was eliminated. Consequently, we will consider the probate court decision insofar as it concerned the attempt to contest the will.

B. Will Contest

{¶ 37} "In Ohio the right to contest the validity of a will or codicil is wholly a creature of statute * * *." *Kluever v. Cleveland Trust Co.*, 173 Ohio St. 177, 180 N.E.2d 579 (1962), paragraph one of the syllabus. "Prior to January 1, 1976, R.C. Chap. 2741 governed will contests. * * * However, on that date, R.C. Chapter 2741 was repealed and R.C. Chapter 2107, dealing with will contest actions, became effective." *Smith v. Klem*, 6 Ohio St.3d 16, 17, 450 N.E.2d 1171 (1983).

{¶ 38} The part of R.C. Chap. 2107 that governs will contests is found in R.C. 2107.71 through R.C. 2107.77. As relevant here, under R.C. 2107.71(A), "[a] person interested in a will or codicil admitted to probate in the probate court * * * may contest its validity by filing a complaint in the probate court in the county in which the will or codicil was admitted to probate." R.C. 2107.72(A) further provides that "[t]he Rules of Civil Procedure govern all aspects of a will contest action, except as otherwise provided in sections 2107.71 to 2107.77 of the Revised Code." *See also* Civ.R. 73 (outlining certain procedures for probate courts and indicating in subdivision (A) that "all of the Rules of Civil Procedure, though not specifically mentioned in this rule, shall apply except to the extent that by their nature they would be clearly inapplicable"). Having reviewed the content of the will contest statutes, we find no relevant exceptions to the Ohio Civil Rules, nor do we find that any civil rules are clearly inapplicable.

{¶ 39} For purposes of the current case, the necessary parties for a will contest would include: persons designated in the will who would receive a testamentary disposition; heirs who would take property under R.C. 2105.06 if the testator had died

intestate; the "executor or administrator with the will annexed"; and "[o]ther interested parties." *See* R.C. 2107.73(A), (B), (C), and (E). Subdivision (D) also includes the attorney general as a necessary party as provided in R.C. 109.25 (relating to charitable trusts). However, Martha's will did not involve such a trust.

**{¶ 40}** "A 'person interested' for purposes of a will contest is '[a]ny person who has such a direct, immediate, and legally ascertained pecuniary interest in the devolution of the testator's estate as would be impaired or defeated by the probate of the will, or be benefited by setting aside the will.' " *State ex rel. Abraitis v. Gallagher*, 143 Ohio St.3d 439, 2015-Ohio-2312, 39 N.E.3d 491, ¶ 16, quoting *Bloor v. Platt*, 78 Ohio St. 46, 49-50, 84 N.E. 604 (1908).

**{¶ 41}** As relevant here, R.C. 2107.76 states that:

> No person who has received or waived the right to receive the notice of the admission of a will to probate required by section 2107.19 of the Revised Code may commence an action permitted by section 2107.71 of the Revised Code to contest the validity of the will more than three months after the filing of the certificate described in division (A)(3) of section 2107.19 of the Revised Code.

**{¶ 42}** Under Civ.R. 3(A), "[a] civil action is commenced by filing a complaint with the court, if service is obtained within one year from such filing upon a named defendant * * *." Thus, the time for filing such an action here would have expired on October 7, 2022, which was three months after Sharon filed the certificate of notice (July 7, 2022).

**{¶ 43}** In its decision, the magistrate remarked, citing R.C. 2107.71, that "Ohio law

provides that a Will Contest action is a separate legal proceeding from the underlying estate case, and must be initiated through the filing of a complaint." Mag. Dec. at p. 2. The magistrate further commented that:

It is plain from the record that neither Michael Martin nor Ann Martin ever commenced a Will Contest action in this Court. As such, any of the Sibling Correspondence alleging a fake or invalid will is irrelevant and a legal nullity as a matter of law. A clearly defined process to challenge the validity of Decedent's Will exists in the Revised Code, and the Siblings did not pursue it.

*Id.*

**{¶ 44}** On consideration, we disagree to some extent with these conclusions. Specifically, the motion to proceed in forma pauperis and the other pleading that Martin filed on October 4, 2022, both bore a completely different caption than the underlying probate case, i.e., they were both captioned as "State of Ohio ex Rel. Michael Martin, Relator, v. Sharon A. Martin, Relator." Both documents also had a blank space for the case number. If a separate action were not intended, the caption would have been the same as the existing case, and the existing case number would have been used. In fact, the rest of the documents Martin filed did contain the same caption and case number as the underlying probate case. Furthermore, as noted, Michael asserted in the body of the second document that he was *contesting the will under R.C. 2107.71*.

**{¶ 45}** Based on the above facts and Michael's request for waiver of the $250 filing fee for "civil cases" because he was indigent, it is apparent that Michael, in fact, intended

to file a separate civil action. We therefore assume that Michael tried to file an action to contest the will, as he has suggested. This pleading would also have been timely, as it was filed within three months after Sharon filed the certificate of notice.

**{¶ 46}** Like the other items in the probate case file, the October 4, 2022 documents were filed with the probate court and were time-stamped. The record lacks any specific explanation as to why they were not docketed as a separate case, insofar as they were captioned differently from the existing probate case and had no case number. Consequently, while the court only considered Michael's effort as "correspondence," it could properly have characterized the effort as an attempt to file an action.

**{¶ 47}** As Michael contends in his brief, he did not have control over how documents were handled once they arrived at the court (although he did, as described below, have certain obligations). Moreover, the probate court's own rules do not include will contest actions among the "special statutory proceedings" that "shall be filed separately and with no other causes of action accompanying the pleading or initiating filings." Mont. Co. P.C.R. 78.3(B).[2] This does not mean will contest actions should not be filed separately. However, the court does not have a specific rule to that effect.

**{¶ 48}** However, even assuming that Michael attempted to file a complaint, it was defective on its face because necessary parties were not joined (or at least named in the caption). These parties included the heirs that would inherit absent the will, including

---

[2] Mont. Co. P.C.R. 78.3(B) became effective on February 1, 2023. *See* https://www.mcohio.org/1319/Local-Rules (accessed on March 14, 2024). Unfortunately, the court's website does not contain a copy of any prior rules. Nonetheless, the February 2023 rules were in effect well before the court overruled Michael's exceptions to the appraisal and inventory in August 2023.

Ann, Drew, and Wanda. We note that Michael did refer to all the necessary parties in the body of his "complaint," where he provided the names and addresses of the next-of-kin, to the extent known.

{¶ 49} Before R.C. 2107.72 was enacted in 1976 to provide for application of the Ohio Civil Rules, courts had dismissed will contest actions where all necessary parties were not joined. *State ex rel. Smith v. Court of Common Pleas, Prob. Div.*, 70 Ohio St.2d 213, 216, 436 N.E.2d 1005 (1982), fn. 5, citing *Kluever,* 173 Ohio St. 177, 180 N.E.2d 579, paragraph one of the syllabus, and *Gravier v. Gluth*, 163 Ohio St. 232, 126 N.E.2d 332 (1955), paragraph three of the syllabus. This was considered a jurisdictional defect. *E.g., Holland v. Carlson*, 40 Ohio App.2d 325, 331, 319 N.E.2d 362 (8th Dist.1974), citing *Fletcher v. First Natl. Bank of Zanesville*, 167 Ohio St. 211, 215, 147 N.E.2d 621 (1958).

{¶ 50} However, based on the 1976 enactment of R.C. 2107.72, *Smith* held that "amendments may be made to plaintiff's complaint to join necessary parties in a will contest action. These amendments would, under Civ.R. 15(C), relate back to the date of the original filing." *Smith* at paragraph two of the syllabus. *See also Smith v. Klem*, 6 Ohio St.3d 16, 450 N.E.2d 1171 (1983), syllabus, following and approving paragraph two of the syllabus in *Smith*.

{¶ 51} After the Supreme Court of Ohio decided *Smith* and *Klem*, lower courts struggled with the application of relation-back based on the wording of Civ.R.15(C). *See Weaver v. Donnerberg*, 26 Ohio App.3d 112, 498 N.E.2d 496 (3d Dist.1985). In this regard, Civ.R. 15(C) states that:

> Whenever the claim or defense asserted in the amended pleading

arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

{¶ 52} In *Weaver*, the Third District Court of Appeals observed that Civ.R. 15(C)'s wording "would first appear to apply not to adding, but to changing, a party. The word change implies that a named party would be omitted and a party not named in the original complaint would be substituted." *Id*. at 114. The court stressed that this interpretation was strengthened by a Staff Note to Civ.R. 15, which referred to "misnomer of parties." *Id*.[3]

{¶ 53} Because no lower court in *Smith* had made any factual decision about the

---

[3] This Staff Note was not included when Civ.R. 15 was amended effective July 2013. However, the only changes from the original rule are to Civ.R. 15(A), not Civ.R. 15(C). As part of the 2013 amendment, the court stressed that "Staff Notes are prepared by the Commission on the Rules of Practice and Procedure. Although the Supreme Court uses the Staff Notes during its consideration of proposed amendments, the Staff Notes are not adopted by the Supreme Court and are not a part of the rule. As such, the Staff Notes represent the views of the Commission on the Rules of Practice and Procedure and not necessarily those of the Supreme Court." https://www.supremecourt.ohio.gov/RuleAmendments/Archive.aspx (accessed on March 15, 2024).

Civ.R. 15(C) requirements, the Third District interpreted *Smith's* syllabus in light of this fact. The Third District therefore added the words " 'if applicable under its terms,' " to *Smith's* holding. *Id.* at 115. This was because "[a]ny other interpretation would imply that the specific requirements of Civ.R. 15(C) were meaningless." *Id.* Consequently, in will contest actions, "a complaint may be amended to add parties pursuant to Civ.R. 15(C), i.e., if its requirements are met. If these requirements are met and the amendments are made, then these amendments will relate back to the date the initial complaint was filed and in so doing avoid application of the * * * limitation period." *Id.*

{¶ 54} After considering the facts of the case before it, the Third District found that Civ.R. 15(C) had not been satisfied. As a result, the court affirmed the dismissal of the will contest complaint. *Weaver*, 26 Ohio App.3d at 115-116, 498 N.E.2d 496. In that particular action, the complaint had named two will beneficiaries, but it had not included two others (two churches) or the executor. *Id.* at 113. The court of appeals found the initial condition in Civ.R. 15(C) was satisfied because appellants were not trying to change their cause of action. However, the last two conditions were not satisfied because appellants had failed to submit evidentiary material showing the churches had notice of the action or knew or should have known the action would have been brought against them but for a mistake about the identify of a proper party. *Id.* at 115-116.

{¶ 55} Other courts have also required satisfaction of the Civ.R. 15(C) requirements in this situation. *E.g., Patzer v. Patzer*, 10th Dist. Franklin No. 83AP-813, 1984 WL 4675, *1 (Mar. 15, 1984); *Fortney v. Fortney*, 5th Dist. Fairfield No. 45-CA-88, 1989 WL 67256, *3 (June 12, 1989); *Kocis v. Chorba*, 6th Dist. Ottawa No. OT-98-033,

1999 WL 173638, *1 (Mar. 31, 1999).

{¶ 56} In *Kocis*, the trial court had previously dismissed the will contest action due to lack of jurisdiction, based on failure to name necessary parties. However, the Sixth District Court of Appeals reversed and remanded the case. *See Kocis v. Chorba*, 6th Dist. Ottawa No. OT-97-033, 1998 WL 135078, *2 (Mar. 20, 1998) (finding the trial court could consider amendment under Civ.R. 15(C) and there was not a lack of jurisdiction). On remand, the trial court again dismissed the case, and another appeal was taken. This time, the Sixth District Court of Appeals affirmed the dismissal because, on remand, the appellant failed to put forth any evidence about compliance with Civ.R. 15(C). *Id.*

{¶ 57} During its discussion, the Sixth District noted that:

Apparently, some confusion still exists as to whether parties may be added, rather than just substituted, to a will contest action pursuant to Civ.R. 15(C). Appellee, citing *Kraly v. Vannewhirk* (1994), 69 Ohio St.3d 627, 635 N.E.2d 323, still maintains that parties may not be added, only substituted. However, *Smith v. Klem, supra*, which has not been overruled, was specific in its application of the rule to permit the addition of parties in will contest actions. *See also, Trubulas v. Doland* (1987), 39 Ohio App.3d 62, 528 N.E.2d 1313, *reversed on other grounds*, 42 Ohio St.3d 8, 536 N.E.2d 642 and *Weaver v. Donnerburg* (1985), 26 Ohio App.3d 112, 498 N.E.2d 496 (pursuant to Civ.R. 15(C), parties may be added, not just substituted, in a will contest action). In *Kraly v. Vannewhirk, supra* the issue involved the addition of parties in an action to enforce coverage under a contract for

uninsured/underinsured motorist insurance and is, therefore, not applicable to this case.

*Kocis*, 6th Dist. Ottawa No. OT-98-033, 1999 WL 173638, at *1, fn. 1.

**{¶ 58}** Despite the Sixth District's mention of confusion, the Supreme Court of Ohio declined further review in *Kocis*. *See Kocis v. Chorba*, 86 Ohio St.3d 1437, 713 N.E.2d 1049 (1999). Moreover, the Supreme Court of Ohio has never cited or discussed either *Smith* or *Kelm* in a relevant way since they were decided. And more recently, the Third District has adhered to the position it took in *Weaver*. *See Elliot v. Moeller*, 3d Dist. Allen No. 1-13-58, 2014-Ohio-4136, ¶ 5-6. *See also Middlebrooks v. Beamon*, 1st Dist. Hamilton No. C-210641, 2022-Ohio-2886, ¶ 8-10 (will contest complaint may be amended to add a party, but the trial court properly dismissed the case because appellant failed to comply with Civ.R. 15(C)).

**{¶ 59}** As to subject matter jurisdiction, it "refers to the constitutional or statutory power of a court to adjudicate a particular class or type of case." *State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248, ¶ 23, citing *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, ¶ 11-12, and 34. " 'A court's subject-matter jurisdiction is determined without regard to the rights of the individual parties involved in a particular case.' " *Id.*, quoting *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, ¶ 19. "Rather, the focus is on whether the forum itself is competent to hear the controversy." *Id.*

**{¶ 60}** Probate courts are courts of limited jurisdiction, and proceedings "are restricted to those actions permitted by statute and by the Constitution." *Corron v.*

*Corron*, 40 Ohio St.3d 75, 77, 531 N.E.2d 708 (1988). By statute, probate courts have exclusive jurisdiction over various matters, including issues pertaining to administration and construction of wills, conduct of fiduciaries, and hearing and determining actions to contest the validity of wills. R.C. 2101.24(A)(1)(a)-(e), (k), (m), (p), (aa), and (bb). Therefore, the probate court here would have had jurisdiction over all the subject matters in question, including a will contest.

{¶ 61} This is consistent with the decisions which held, after *Smith,* 70 Ohio St.2d 213, 436 N.E.2d 1005, and *Kelm*, 6 Ohio St.3d 16, 450 N.E.2d 1171, that "joinder of 'necessary' parties in will contest actions, is no longer jurisdictional, but [is] governed by the Civil Rules." *Kocis*, 6th Dist. Ottawa No. OT-97-033, 1998 WL 135078, at *2, citing *Trubulas v. Doland*, 39 Ohio App.3d 62, 65, 528 N.E.2d 1313 (1st. Dist.1987), *rev'd on other grounds*, 42 Ohio St.3d 8, 536 N.E.2d 642 (1989). *See also Simpson v. Simpson*, 12th Dist. Butler No. CA95-10-180, 1996 WL 507347, *1-2 (Sept. 9, 1996) (the trial court erred in dismissing a will contest action for lack of jurisdiction based on appellant's failure to name necessary parties). We agree that failing to name necessary parties is not a jurisdictional defect.

{¶ 62} In the case before us, Michael's "complaint" was defective, as indicated, because he failed to include necessary parties. As also noted, Michael filed this document on October 4, 2022, more than ten months before the August 23, 2023 magistrate's decision. However, in the interim, Michael made no attempt to amend the pleading to correct the defect.

{¶ 63} The probate court's treatment of Michael's filing as "correspondence," while

not explained, may be due to the fact that Michael failed to comply with filing requirements.  First, Michael never attempted to have the complaint served as required by Civ.R. 73(C) and (E) and Civ.R. 4 - 4.6, which include furnishing the clerk with sufficient copies for service.  *See* Civ.R. 4(B).  Under Mont. Co. P.C.R. 57.2(F), Michael was also required to electronically file instructions for service, and the clerk would then issue a summons and process the type of service that was requested.  Michael never complied with this rule.

{¶ 64} Michael also failed to qualify as an indigent litigant by filing an affidavit of indigency.  *See* R.C. 2323.311(A) and (B)(1).  "R.C. 2323.31 allows courts of common pleas to require an advance deposit as security for fees or costs when a civil action is filed."  *Crenshaw v. Howard*, 2022-Ohio-3914, 200 N.E.3d 335, ¶ 34 (8th Dist.), citing R.C. 2323.31.  As relevant, here, R.C. 2323.30 also states that: "In all actions in which the plaintiff is a nonresident of the county in which the action is brought * * * or any party required to furnish security under section 2323.31 of the Revised Code, the plaintiff shall deposit cash or furnish security for costs."  Michael was clearly not a resident of Montgomery County, as he was imprisoned at the Madison Correctional Facility in London, Ohio, at the time.

{¶ 65} Consistent with the above statutes, the probate court rules state that: "A deposit is required as security and shall be paid electronically."  Mont. Co. P.C.R. 58.1(C).  The probate court has also established fees for various matters.  *See* https://www.mcohio.org/474/Fees (accessed on March 14, 2024).  An example is collection of $3.00 for each matter filed, in order to procure and maintain computer systems, per R.C.

2101.162. *See* Mont.Co. P.C.R. 58.1(B)(1). An additional $10.00 charge is assessed for each matter filed, including civil actions, for the same purposes. *Id.* at 58.1(B)(2). Other authorized fees for filing actions include $15.00 for implementing resolution procedures and $15.00 for special project fees for various items. *Id.* at 58.1(B)(3) and (4).

{¶ 66} Under R.C. 2323.311(B)(1), "[i]n order to qualify as an indigent litigant, the applicant shall file with the court in which a civil action or proceeding is filed an affidavit of indigency in a form approved by the supreme court, or, until that court approves such a form, a form that requests substantially the same financial information as the financial disclosure and affidavit of indigency form used by the public defender for the appointment of counsel in a criminal case." In line with this statute, the Supreme Court of Ohio has provided a probate form for affidavits of indigency. *See* Form 26.8, https://www. supremecourt.ohio.gov/docs/ LegalResources/Rules/superintendence/probate_forms (accessed March 15, 2024).

{¶ 67} R.C. 2323.311(B)(3) also states that: "Upon the filing of a civil action or proceeding and the affidavit of indigency under division (B)(1) of this section, the clerk of the court shall accept the action or proceeding for filing." Because Michael never complied with this requirement, the clerk was not required to accept his "complaint" as such for filing. The complaint, therefore, was never accepted, but not exactly for the reason the trial court expressed. *Compare Woodgeard v. Hines*, 4th Dist. Hocking No. 22CA7, 2023-Ohio-2362, ¶ 19 (because appellant "did not file an affidavit of indigency prior to filing his objections [to a magistrate's decision], the trial court did not abuse its

discretion in requiring the payment of the fee prior to considering his objections"). Again, while the trial court never indicated why it was filing Michael's documents as "correspondence," this may have been the reason.

**{¶ 68}** We have previously said that deciding "indigence for purposes of whether a plaintiff should be required to pay filing fees and court costs 'is typically granted liberally in order to preserve the due process rights of litigants and guarantee an access to judicial process and representation.' " *Guisinger v. Spier*, 166 Ohio App.3d 728, 2006-Ohio-1810, 853 N.E.2d 320, ¶ 6 (2d Dist.), quoting *Evans v. Evans*, 10th Dist. Franklin Nos. 04AP-816 & 04AP-1208, 2005-Ohio-5090, ¶ 23. *Accord In re Adoption of U.I.*, 2d Dist. Montgomery No. 29908, 2024-Ohio-682, ¶ 36. However, these considerations do not apply where a litigant fails to properly present the indigency issue to the court.

**{¶ 69}** The Supreme Court of Ohio has " 'repeatedly declared that 'pro se litigants * * * must follow the same procedures as litigants represented by counsel.' " *State ex rel. Neil v. French*, 153 Ohio St.3d 271, 2018-Ohio-2692, 104 N.E.3d 764, ¶ 10, quoting *State ex rel. Gessner v. Vore*, 123 Ohio St.3d 96, 2009-Ohio-4150, 914 N.E.2d 376, ¶ 5. Furthermore, the rule is " 'well established that pro se litigants are presumed to have knowledge of the law and legal procedures and that they are held to the same standard as litigants who are represented by counsel.' " *State ex rel. Fuller v. Mengel*, 100 Ohio St.3d 352, 2003-Ohio-6448, 800 N.E.2d 25, ¶ 10, quoting *Sabouri v. Ohio Dept. of Job & Family Servs.*, 145 Ohio St.3d 651, 654, 763 N.E.2d 1238.

**{¶ 70}** Consequently, while the trial court could properly have construed Michael's document as an effort to contest the will, Michael was not harmed because his will contest

action (even if actually attempted) was never successfully commenced. As a result, this is not the "extremely rare case involving exceptional circumstances" that would justify applying the plain error doctrine. *Goldfuss*, 79 Ohio St.3d 116, 679 N.E.2d 1099, at syllabus.

{¶ 71} Based on the preceding discussion, we conclude that Michael's apparent assignment of error is without merit.

III. Conclusion

{¶ 72} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

LEWIS, J. and HUFFMAN, J., concur.